USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BUILDING SERVICE 32BJ HEALTH FUND;
BUILDING SERVICE 32BJ PENSION FUND;
BUILDING SERVICE 32BJ SUPPLEMENTAL
RETIREMENT & SAVINGS FUND; BUILDING
SERVICE 32 BJ LEGAL SERVICES FUND; and
THOMAS SHORTMAN TRAINING &
SCHOLARSHIP FUND,

                           Plaintiffs /
                           Counterclaim
                           Defendants,

          -v-

GCA SERVICES GROUP, INC.,

                           Defendant /
                           Counterclaim
                           Plaintiff.

15 Civ. 6114 (PAE)

OPINION & ORDER

------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      This case involves claims for unpaid contributions under two collective bargaining agreements. On August 4, 2015, five multi-employer employee benefit plans—Building Service 32BJ Health Fund ("Health Fund"), Building Service 32BJ Pension Fund, Building Service 32BJ Supplemental Retirement & Savings Fund, Building Service 32BJ Legal Services Fund, and Thomas Shortman Training & Scholarship Fund (collectively, the "Benefits Funds"—brought this action against GCA Services Group, Inc. ("GCA"). They seek payment of contributions which they claim GCA was obliged to—but did not—make between January 1, 2009 and December 31, 2012, under two sequential collective bargaining agreements ("CBAs"). They sue GCA under §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended* (29 U.S.C. §§ 1132(a)(3), 1145), and § 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) ("Taft-Hartley"). GCA disputes that the contributions

were due, and argues that the Funds' claims as to some contributions are untimely. GCA brings counterclaims under ERISA and federal common law, seeking to recover overpayments it claims that it mistakenly made to the Benefits Funds.

Each party now moves for summary judgment on all claims. For the reasons below, the Court grants summary judgment for the Benefits Funds both as to its claims and as to GCA's counterclaims, save that the Court finds, with GCA, that the Benefits Funds' claims for contributions that accrued before August 4, 2015 are untimely.

## I. Background[1]

### A. The Parties

The Benefits Funds are "jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of Taft-Hartley (29 U.S.C. § 186(c)(5))," and are employee benefit plans within the meaning of §§ 3(2)–(3) of ERISA, 29 U.S.C. § 1002(3). JSF ¶ 4. GCA, a for-profit domestic corporation doing business in New York, New Jersey, and Pennsylvania, is an employer within the meaning of §§ 3(5) & 515 of ERISA, 29 U.S.C. § 1002(5), and is an industry affecting commerce within the meaning of § 301 of Taft-Hartley, 29 U.S.C. § 185. *Id.* ¶ 6.

### B. The Collective Bargaining Agreements

Under two sequential collective bargaining agreements ("CBAs") with Local 32BJ Service Employees International Union (the "Union"), GCA agreed to pay contributions to the Benefits Funds on behalf of its covered employees. *Id.* ¶¶ 6–8. The CBAs are known as the

---

[1] The Court draws these facts from the parties' joint stipulation of undisputed facts ("JSF"), Dkt. 41, and attached exhibits. The parties agree that there are no disputed facts relevant to this case, and that it is appropriate to resolve all claims at the summary judgment stage. *See* Transcript of March 21, 2016 Conference ("Tr.") at 2–7.

"Hartford County Cleaning Contractors Association Agreements." The first CBA was effective between January 1, 2008 and December 31, 2011, *id.* Ex. A ("CBA I"); the second, between January 1, 2012 and December 31, 2015, *id.* Ex. D ("CBA II").

The issue here is whether contributions for work on Connecticut state building projects were to be made based on the covered employees' hours worked or hours worked and/or paid for. As to that point, in Articles 18.2 and 19.1, CBA I provided that, as a general rule, that GCA make contributions on behalf of covered employees at certain rates "for all hours worked and/or paid for, to a maximum of forty (40) hours per week." JSF ¶¶ 8–9. But, with respect to work on state building projects, Article 33.1 of CBA I provided that such work "shall have the wage rates and the value of benefits determined by the State." *Id.* ¶ 9.

Similarly, Articles 18.1 and 19.1 of CBA II required, as a general rule, that contributions be made "for all hours worked and/or paid for, including overtime." *Id.* ¶¶ 12–14. And Article 33.1 of CBA II stated that "[e]mployees employed at buildings covered by the Connecticut Standard Wage Law shall receive not less that the wage rates and benefits required by the Standard Wage Law." *Id.* ¶ 15.

### C. Procedural History

On August 4, 2015, the Benefits Funds filed a Complaint. Dkt. 1. On September 25, 2015, GCA filed an answer and counterclaims. Dkt. 10. On November 4, 2015, the Benefits Funds filed an amended answer to the counterclaims, Dkt. 29, and on November 17, 2015, the Health Fund filed its amended answer to the counterclaims, Dkt. 32.

On March 21, 2016, the Court held a pre-motion conference as to the forthcoming cross-motions for summary judgment. *See* Dkt. 44. On April 18, 2016, the parties, at the Court's direction, filed Joint Stipulated Facts, and the Benefits Funds moved for summary judgment on all claims. Dkt. 41. On April 29, 2016, the Benefits Funds filed a memorandum of law in

support of their motions. Dkt. 42 ("Funds Br."). On May 16, 2016, GCA moved for summary judgment on all claims, Dkt. 46, and filed a memorandum of law in support, Dkt. 47 ("GCA Br."). On May 27, 2016, the Benefits Funds filed a reply memorandum in support of its motion. Dkt. 50 ("Funds Rep. Br."). On June 13, 2016, GCA filed a reply memorandum in support of its motion. Dkt. 53 ("GCA. Rep. Br.").

## II.     Standards Applicable to Summary Judgment Motions

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### III. Discussion

The Benefits Funds argue that GCA breached its duties under both CBA I and CBA II by making benefits contributions for covered employees' work on state building projects based solely on the hours that those employees actually worked, rather than also for hours for which the employees were paid but did not work. The Funds argue that contributions should have been based on their employees' "hours worked and/or paid for," which would include, *inter alia*, sick days and paid vacation days. They argue that Article 33.1 of each CBA, the provision applicable to work on such projects, yields this result. The provisions of respective CBAs applicable to work on such projections state that employees "shall have the wage rates and the value of benefits determined by the State" (CBA I) and shall be compensated at "not less that the wage rates and benefits required by the Standard Wage Law" (CBA II). These provisions, the Benefit Funds claim, refer—and require benefits to be paid according to—Connecticut's prevailing wage law. *See* Conn. Gen. Stat. 31–57f(a)(6). And, the Funds argue, that law, in turn, directs the Court to the generally applicable provisions of these very CBAs, the wage provisions of which provide—in Articles 18.2 and 19.1 of CBA I, and Articles 18.1 and 19.1 of CBA II—that benefits are to be paid for "hours worked and/or paid for."

In opposition, GCA argues that Articles 33.1 of CBA I and CBA II instruct that benefits are to be paid in accordance with "state law." And GCA construes "state law" to refer to the information contained on the website of the Connecticut Department of Labor (DOL), which states that benefits are paid based on hours worked, and does not refer to hours paid for. Separately, GCA objects to the Funds' summary judgment motion on the more limited ground that any claims for delinquent contributions that accrued before August 4, 2009 are time-barred by the governing six-year statute of limitations. As noted, GCA also pursues counterclaims to recover alleged overpayments that it made during periods covered by each CBA.

For the reasons that follow, the Court grants summary judgment to the Benefits Funds on all claims and counterclaims, save that, as to the Benefits Funds' claims for contributions, the Court holds claims that predate August 4, 2009 are time-barred. The Court first addresses the Benefits Funds claims under each CBA, then the statute of limitations issue, and then GCA's counterclaims.

### A. Was GCA Required to Pay for "Hours Worked and/or Paid For"?

#### 1. CBA I

Article 33.1 of CBA I states that compensation for work on state buildings "shall have the wage rates and the value of benefits determined by the State." JSF ¶ 9. The parties agree that Article 33.1 thus incorporates the State of Connecticut's general valuation of benefits for work. *See* Funds Rep. Br. at 2 ("Article 33 of CBA I simply states that contributions must be in accord with the state prevailing wage and benefit provisions."); GCA Br. at 5 ("The CBAs expressly incorporate the wage rates and value of benefits determined by the state."). The parties disagree, however, on how to ascertain what this valuation is.

The Benefits Funds argue that Article 33.1 looks to Connecticut's "prevailing rate of benefits," as codified by state law. The relevant statute, Conn. Gen. Stat. 31–57f(a)(6), provides that:

> 'prevailing rate of benefits' means the total cost to the employer on an hourly basis for work performed within the city of Hartford, under a collective bargaining agreement that establishes the prevailing rate of wages, of providing health, welfare and retirement benefits, including, but not limited to, (A) medical, surgical or hospital care benefits; (B) disability or death benefits; (C) benefits in the event of unemployment; (D) pension benefits; (E) vacation, holiday and personal leave; (F) training benefits; and (G) legal service benefits, and may include payment made directly to employees, payments to purchase insurance and the amount of payment or contributions paid or payable by the employer on behalf of each employee to any employee benefit fund.

Under this provision, the parties agree, the value of benefits for work on state building contracts is determined by the largest collective bargaining agreement in place at the time. *See*

6

JSF ¶ 20; *see also* Conn. Gen. Stat. 31–57f(a)(5) ("'[P]revailing rate of wages' means the hourly wages paid for work performed within the city of Hartford under the collective bargaining agreement covering the largest number of hourly nonsupervisory employees employed within Hartford County in each classification established by the Labor Commissioner under subsection (e) of this section, provided the collective bargaining agreement covers no less than five hundred employees in the classification"). And, the Benefits parties agree, the largest such agreement at the time was CBA I. *See* JSF ¶ 20. Thus, the Benefits Funds argue, CBA I defers to state law to determine the value of benefits, and state law in turn points back to the general provisions of CBA I for that valuation. On this basis, the Benefits Funds argue, Articles 18.2 and 19.1, which provide for the payment of benefits based on "all hours worked and/or paid for," control.

GCA counters that Article 33.1 should be read to defer to "wage and benefit information provided by the state," which, GCA argues, is information reflected on the website for the Connecticut Department of Labor. That website states that health and pension contributions "are made for all hours worked up to a maximum of 40 hours per week." JSF, Ex. F. The parties agree that the information on the DOL website aims to reflect "the prevailing wage and benefits for the Hartford County Cleaning Contractors Association Agreement"—in other words, CBA I. But they draw different conclusions from the fact that the website's statement as to the basis of benefits paid ("hours worked") is at odds with the express terms of Articles 18.2 and 19.1 of CBA I ("hours worked and/or paid for"). The Benefits Funds argue that the shorthand formulation used on the website inaccurately reflects the valuation metric required by Articles 18.2 and 19.1 of CBA I. They argue that the website is not a source of rights, and therefore must give way to the plain language of CBA I. GCA counters that the website's formulation could not have been a "mistake," because the Union participated in developing that language, and because

the website states that its statements were "determined [] to be accurate if used according to the requirements of the law." Dkt. 41, Ex. F. Thus, GCA claims, the website's formulation controls as to the valuation under Connecticut law.

The Court finds the Benefits Funds' argument on this point far the more persuasive. The Court holds, with the Funds, that Article 33.1 in CBA I looks to Connecticut's prevailing wage law, which, in turn, as the parties agree, points back towards CBA I—then the largest collective bargaining agreement in Hartford County—and specifically, as the Benefits Funds argue, Articles 18.2 and 19.1. GCA's main counterargument, that the linguistic formulation on the state's website is controlling, is logically deficient. Both parties agree that that website aims to represent the benefits valuation used in the Hartford County Cleaning Contractors Association Agreement (*i.e.*, CBA I). Under those circumstances, to the extent the website's locution deviates from the terms of CBA I, those terms (stated clearly in Articles 18.2 and 19.1) control. There is no charter for allowing the shorthand on the website to overcome the clear language of the collective bargaining agreement it aims to represent.

GCA makes two other arguments, each also applicable to CBA II. First, GCA argues, the statement in Articles 18.2 and 19.1 that payments will be made for "hours worked and/or paid for" "does not make sense in isolation." GCA Br. at 6. GCA urges that this phrase means that for some employees, benefits will be paid on all hours paid for, including vacation days and sick days, whereas for others, namely those working on state building contracts, benefits would be paid only for hours actually worked. *Id.* at 6. That argument does not follow. Indeed, the Court finds the better interpretation of the phrase "hours worked and/or paid for" that under the agreement, some hours for which benefits would be paid would be hours both worked and paid for by the employer (GCA), while other hours paid for would merely be hours paid for (*e.g.*, sick

8

days and vacation). Thus, among those hours for which benefits would be paid would be both "hours worked and/or paid for." And while hours worked on state building projects are subject—under Article 33.1—to a different analysis that looks to the prevailing wage law, that law, given CBA I's standing as the largest collective bargaining agreement in Hartford County, refers back to the generally applicable provisions of the CBA (Articles 18.2 and 19.1). Of course, had the largest collective bargaining agreement in Hartford County at the time within the definition of Conn. Gen. Stat. 31–57f(a)(5) been different, the value of benefits as set under that agreement, for better or worse, would have controlled.

Second, GCA points to a change in how the Connecticut DOL website characterized the hours used to measure benefits. In 2011, the website stated that health and pension contributions "are made for all hours worked *up to a maximum of 40 hours per week*," JSF, Ex. F (emphasis added), but, in 2012, the website stated that health and pension contributions "are made for all hours worked; *previously capped at 40 hours per week*," *id.* (emphasis added). GCA argues that the fact of this modification supports giving greater deference to the website's characterization of the state's payment practices. GCA Br. at 5. It claims that the fact that these changes track differences between the CBAs "eviscerat[es] any claim by Plaintiffs that the website's description of benefits is 'obviously an error.'" *Id.* But that argument is unpersuasive. The website is not the source of employers' obligations with respect to the payment of benefits. It is derivative of the agreements that fix those obligations. And GCA does not point to any agreement whose text supports its narrow construction of the hours on which benefits were to be paid, let alone one which CBA I can be fairly claimed to incorporate by reference. Moreover, absent evidence as to the empirical basis for the website's statements, the website itself is

inadmissible evidence. There is no foundation on which to treat the statements on it as reliable evidence of the health and pension contribution practices.

Accordingly, for the reasons reviewed above, the Court holds that the general provisions of CBA I with regard to the basis upon which benefits are to be calculated—*i.e.*, Articles 18.2 and 19.1—ultimately control. GCA was therefore required to make benefits payments for its covered employees working on state projects for "all hours worked and/or paid for." The Court grants summary judgment to the Benefits Funds on this point.

### 2.     CBA II

Article 33.1 of CBA II provided that that "[e]mployees employed at buildings covered by the Connecticut Standard Wage Law shall receive not less that the wage rates and benefits required by the Standard Wage Law." JSF ¶ 15. The parties agree that the "Standard Wage Law" referenced in Article 33.1 is the same Connecticut General Wage statute, Conn. Gen. Stat. § 31–57f (2012), addressed earlier in connection with the discussion of prevailing wages. *See* Funds Rep. Br. at 5; GCA Rep. Br. at 2. The parties agree, too, that this statute refers back to the valuation provided by CBA II. *See* GCA Rep. Br. at 2 ("The Standard Wage Law referenced in Article 33 of CBA II simply points back to the collective bargaining agreement"); Funds Rep. Br. at 3.

On this basis, the Benefits Funds again argue that Article 33.1 thereby looks, through the state's prevailing wage statute, to the general benefits provisions of CBA II, as the collective bargaining agreement covering the largest number of employees in Hartford County. And because those provisions of CBA II—Articles 18.1 and 19.1—expressly require payment of benefits based "on hours worked and/or paid," the Funds argue that this measure controls. Conversely, GCA again argues that proper valuation of benefits under CBA II was that which was displayed in the Connecticut DOL website. GCA Rep. Br. at 2.

For the same reasons as addressed in connection with CBA I, the Court holds that the general benefits provisions of CBA II, Articles 18.1 and 19.1, and not the locution on the DOL's website, set the measure of the required benefits contributions under CBA II. GCA therefore was required to make benefits payments based on "all hours worked and/or paid for." The Court, therefore, also grants summary judgment to the Funds on this point.

### 3. Are the Funds' Claims as to 2009 Contributions Timely?

GCA argues that any delinquent contributions claimed by the Benefits Funds from the time period between January 1, 2009 and August 4, 2009 are untimely. GCA Br. at 4. ERISA does not specify a statute of limitations for civil enforcement actions under 29 U.S.C. § 1132. Time limitations for such claims instead are borrowed from the most analogous state statute of limitations. *See Miles v. NY State Teamsters Conference Pension & Retirement Fund*, 698 F.2d 593, 601 (2d Cir. 1983). For claims under § 1132 brought in New York, the Second Circuit has applied a six-year limitations period, borrowed from the most closely analogous New York State statute. *Campanella v. Mason Tenders' Dist. Council Pension Plan*, 299 F.Supp.2d 274 (S.D.N.Y. 2004). On this basis, GCA claims, inasmuch as this action was filed on August 4, 2015, the Funds' claims for contributions for the period between January 1, 2009 and August 4, 2009 are untimely.

On this point, GCA is correct. The Benefits Funds counter that that their claims with respect to such contributions did not begin to accrue until the audit letters noting deficiencies were issued in July 2014. *See* Funds Rep. Br. at 8. But courts, including in this district, have held that an action for delinquent contributions under ERISA begins to accrue on the commencement date of the delinquent contributions. *See, e.g., Rumore v. Multigas Distribs., Ltd.*, S.D.N.Y. 90 Civ. 2489 (SWK), 1992 U.S. Dist. LEXIS 3533, at *5 (Mar. 23, 1992); *see also Michigan United Food and Commercial Workers Unions & Drug & Mercantile Employees*

11

*Joint Health and Welfare Fund v. Muir Company, Inc.*, 992 F.2d 594, 599–600 (6th Cir. 1993); *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C. Cir. 1991); *Durso v. 130-10 Food Corp.*, 2009 WL 3084268, *4 (E.D.N.Y. Sept. 23, 2009); *Central States Pension Fund v. Transport Service Co.*, 2009 WL 424145 at *8–9 (N.D. Ill. Feb. 17, 2009).

In arguing that their pre-August 4, 2009 claims are timely, the Benefits Funds rely on *Gesualdi v. Juda Constr., Ltd.*, S.D.N.Y., 2011 U.S. Dist. LEXIS 124349 (Oct. 25, 2011) ("*Gesualdi*"), and *U.S.W.U. Local 74 Welfare Fund v. Monticello Central Sch. Dist.*, E.D.N.Y. No. 13 Civ. No. 1779 (ENV) (MDG), 2014 U.S. Dist. LEXIS 72785 (May 18, 2014) ("*U.S.W.U. Local 74 Welfare Fund*"). Both cases hold, the Benefits Funds argue, that the limitations period begins to run at the time an audit uncovers a deficiency. Funds Rep. Br. at 8. But these cases are inapposite. In *Gesualdi*, the court found claims timely in light of unrebutted testimony that the plaintiffs there lacked the records necessary to alert them to the deficiency, such that a routine compliance audit would have not uncovered the claims. *See Gesualdi* at *10. Similarly, in *U.S.W.U. Local 74 Welfare Fund*, the parties actually agreed as to the accrual date of the plaintiffs' claims. *See U.S.W.U. Local 74 Welfare Fund*. Conversely, here, the parties have stipulated that the claims in question "*accrued* between January 1, 2009 and December 31, 2012," JSF ¶ 7 (emphasis added), not when the July 2014 audit uncovered them. The parties have furthered stipulated that the Funds owed a fiduciary duty to review and monitor contributions made by GCA, JSF ¶ 18, which review, at the time of the delinquent contributions, would have alerted the Funds to the deficiencies.

The Court, accordingly, holds that the Benefits Funds' claims, to the extent based on contributions required to have been during the period between January 1, 2009 and August 4, 2009, are untimely. Summary judgment for GCA is warranted as to such claims.

**B.     GCA's Counterclaims**

GCA brings two counterclaims. Each seeks to recover overpayments that it allegedly made (1) "for some of its covered employees based on all hours paid, rather than hour worked," and (2) "for employees who were no longer in the bargaining unit because their employment had terminated or they were not longer working at buildings covered by the applicable collective bargaining agreements." JSF ¶¶ 23–24.[2] For the purpose of the summary judgment motion, the Benefits Funds assume *arguendo* that there were such overpayments. They argue, however, that the law does not permit GCA to compel recovery of any such overpayments.

The Benefits Funds are correct. ERISA provides that "[e]xcept as provided in [subsection (2)] the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c). In *Frank L. Ciminelli Const. Co. v. Buffalo Laborers Supplemental Unemployment Ben. Fund*, 976 F.2d 834 (2d Cir. 1992), the Second Circuit definitively construed this provision as applied to claims for recoupment of mistaken contributions.[3] It held that "[a]ny debate over whether a repayment of a mistaken contribution "inures" to an employer is settled by the fact that one of the exceptions in subsection (2) explicitly addresses the legality of such repayments. That exception permits plan administrators to return mistaken contributions "within 6 months after the

---

[2] The two counterclaims are based on ERISA and federal common law. Each seeks the same relief—recoupment of GCA's alleged overpayments. As explained below, however, the Second Circuit's analysis of benefit-recoupment claims under ERISA holds that federal common law does not independently operate in this area.

[3] The Second Circuit has since held that *Ciminelli*, applying ERISA, precludes claims under federal common law for the same relief. *See Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994) ("In this Circuit, however, *Frank L. Ciminelli Const. Co. v. Buffalo Laborers Supplemental Unemployment Benefit Fund*, 976 F.2d 834 (2d Cir. 1992), and *Dumac Forestry Serv., Inc. v. International Brotherhood of Electrical Workers*, 814 F.2d 79 (2d Cir. 1987), govern a claim to recover an overpayment, not federal common law.").

plan administrator determines that the contribution was made" by mistake of fact or law. 29 U.S.C. § 1103(c)(2)(A)(ii) (1988)," *id.* at 835.

Critically here, the Circuit has further held that § 1103(c)(2)(A)(ii) "neither commands nor precludes the payment of refunds; it merely *permits* the return of contributions mistakenly made." *Dumac Forestry Servs., Inc. v. Int'l Bhd. of Elec. Workers*, 814 F.2d 79, 82 (2d Cir. 1987) (internal quotation marks and citation omitted). In *Brown v. Health and Retirement Corp. of America*, 25 F.3d 90, 94 (2d Cir. 1994), the Circuit held that where an employer, such as GCA, seeks a refund for overpayments to a fund, such as the Benefits Funds, it must show: (1) that the refund policy was arbitrary and capricious; (2) that the equities favor restitution; and (3) the effect of the claimed setoff on individual beneficiaries to whom the fund may have discharged financial responsibilities by reason of the overpayment. *Id.*

The summary judgment record does not permit GCA to establish the first of those elements. GCA has not adduced evidence that would permit a finding that the Benefits Funds' refund policy was "arbitrary and capricious," as *Brown* requires. The parties have stipulated that the Funds' refund policy provides as follows:

> 1. Employer request. An employer may request a refund of amounts that it has overpaid by identifying the amount and date of the overpayment in writing to the Funds and by providing any additional information that the Funds request to verify that the amount was an overpayment.
>
> 2. Time for making request. Such a request must be made within two years after the date on which the overpayment was remitted to the Funds. This time limit shall not prevent the Funds from voluntarily correcting an overpayment that has been discovered and verified through means other than the employer's request.

JSF, Ex. J at 11–12.

GCA's sole critique of this policy is that it "limits refunds to two years and imposes a number of obligations and restrictions on employers," whereas "there appears to be little to no

limitation on the [Benefits] Funds' actions or rights" with regard to seeking delinquent payments from employers. GCA Br. at 9–10. But those features do not make the Benefits Funds' declination to reimburse GCA for alleged overpayments arbitrary and capricious. And GCA has adduced no evidence that the Benefits Funds' decision not to refund its alleged overpayments was on account of the temporal limitations in the refund policy. On the contrary, as the Benefits Funds note, *see* Funds Br. at 8; Funds Rep. Br. at 5–6, the Benefits Funds' communications reflect that they declined to pay refunds to GCA based on their conclusion that there were, in fact, no such overpayments, JSF, Ex. L.[4]

Because the evidence cannot support a finding that the Benefits Funds' refund policy, in general or as applied to GCA, was arbitrary and capricious, the Court has no occasion to reach the other two factors identified in *Brown*. The Court grants summary judgment to the Benefits Funds, and denies it to GCA, on GCA's counterclaims.

## IV. Next Steps as to Plaintiffs' Claims under CBA I and CBA II

The parties have agreed that it is premature for the Court to address damages. Tr. 4–6. The Court therefore directs the parties to meet and confer within three weeks of this decision, *i.e.*, by Friday, February 24, 2017, in an attempt to resolve this action. In the event the parties do not do so, they are directed, by Friday, March 3, 2017, to submit a joint letter proposing next and remaining steps in this case, including a plan to expeditiously resolve issues as to damages.

---

[4] For this reason, the two cases on which GCA relies in which courts found funds' decisions not to refund arbitrary and capricious based on lopsided imbalances between the deadline for pursuing refunds of overpayments and that for pursuing delinquent contributions are inapposite. *See Jamail, Inc. v. Carpenters Dist. Council of Hous. Pension & Welfare Trusts*, 954 F.2d 299 (5th Cir. 1992); *Arnold v. Storz*, E.D.N.Y. No. 00 Civ. No. 4485 (CBA), 2005 U.S. Dist. LEXIS 35971 at *31 (Sept. 30, 2005).

## CONCLUSION

For the reasons stated above, the Benefits Funds' motion for summary judgment is granted, both as to the Benefits Funds' claims for delinquent payments under CBA I and CBA II, and as to GCA's counterclaims, save that, plaintiffs' claims for delinquent payments that accrued before August 4, 2009, are untimely. To the extent that the Benefits Funds' claims pursue relief based on such payments, the Court grants summary judgment to GCA.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 46.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: February 3, 2017
      New York, New York